UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS CARMONA, | No. 2:10-cv-0898 KJM KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| D'ALESSANDRO, | |
| Defendant. | |

I. Introduction

Plaintiff is a state prisoner, incarcerated at Mule Creek State Prison (MCSP), who proceeds without counsel and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on the Second Amended Complaint (ECF No. 18), against sole defendant D'Alessandro, a MCSP correctional officer, pursuant to plaintiff's Eighth Amendment claim that defendant was deliberately indifferent to plaintiff's need to be protected from injury by his cellmate, inmate Gonzales. Presently pending is defendant's motion to dismiss this action on the ground that plaintiff has failed to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6); and, alternatively, because defendant is entitled to qualified immunity.[1]

---

[1] Defendant withdrew her third argument, that plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997), after learning that plaintiff's related loss of good time credit was restored. (See ECF No. 28.)

1

(ECF No. 27.) Plaintiff filed an opposition (ECF No. 35), and defendant filed a reply (ECF No. 36). For the reasons that follow, this court recommends that defendant's motion to dismiss be denied.

II. The Second Amended Complaint

Pursuant to the allegations of the Second Amended Complaint (SAC), in September 2008, plaintiff was celled at MCSP with inmate Gonzales. The complaint alleges that "the officers of 14 block were well aware . . . [that] in the past months [Gonzales] was given disciplinary actions for manufacturing and comsuption (sic) of pruno," an alcoholic drink, and that Gonzalez had been "reprimanded for not following direct orders." (SAC at 4.) On September 7, 2008, plaintiff and Gonzalez together gave defendant D'Alessandro a request for cell move based on their mutually asserted incompatibility. (Id.; see also id. at 9 (Exh. 3).) Defendant approved and signed the request, apparently on the same day. (Id. at 9.) However, the complaint alleges that defendant later denied the request "on some boggus (sic) grounds." (Id. at 4.) As a result, Gonzales allegedly "became more hostile towards [plaintiff] because he wanted to move to another cell and was denied." (Id.)

Plaintiff alleges (SAC at 5 (sic)):

> I told CO D'Alessandro about Inmate Gonzales behavior that he made threats against me that he said he was going to hit me if I stayed in that cell with him. So CO D'Alessandro took the request again and told me that she was going to see what could be done. Meanswhile I had to go back and be lock up with the individual who had threatened me. Later she came back again saying there was nothing she can do to help me.

The complaint alleges that plaintiff then "went at 6:30 yard time and talk[ed] to the sergeant of the watch, CO Cooper Sgt. about my situation and he clearly told me [']Talk to your floor officer D'Alessandro. She is the one in charge for your safety.[']" (Id.) Plaintiff alleges that he "kept doing what Sgt. Cooper told me," and also talked with Second Watch Sergeant Todd, who told plaintiff "the same as Sgt. Cooper talk to your floor officer. She is responsible for your safety." (Id. at 5-6.)

Plaintiff alleges that he then "exhausted all my ways t[h]rough out MAC [Men's Advisory Council] Rep. who brought my situation to the chain of command and were told the same thing,

2

1  talk to your floor staff they are in charge of your safety." (Id. at 6; see also id. at 10 (Exh. 2).)

2  The subject MAC complaint, dated September 12, 2013, reiterates plaintiff's concerns, their prior

3  denial, and plaintiff's request for an "emergency move." (Id. at 10.)

4      The complaint next alleges ( SAC at 6-7 (sic)):

> The days followed and my concern grew toward Inmate Gonzales bad behavior and on-going t[h]reats to beat me up. I approached CO D'Alessandro again about my situation who by now was well aware of my predicament . . . . [I] told her what both Sgts. told me and all she said was that I needed to Man up to my Cellie [and] ordered me to go back to my cell which with all the panic and concern I did.

9      The complaint then states (id. at 7-8 (sic)):

> [I] also approached CO Reis and CO Bradley floor officers at the time but to no effort. They both told me that they would talk to their supervisor and see what can be done. They ask me what do I want to do. I answered I wanted to get out of that cell because my cellie was t[h]reat[en]ing to beat me up. They later said they call their supervisor that there was nothing they would do to help me, but again I went and talk to the Sgts. Cooper & Todd as the days went by and they told me that floor officers are in charge for our safety. That they are the ones who should be dealing with my [s]ituation.

16      On September 22, 2008, inmate Gonzales, who was allegedly drunk at the time, punched

17  plaintiff in the left eye. (Id. at 8, 13 (Injury Report).) As described in pertinent part by Control

18  Booth Officer Sauve (id. at 11 (RVR)):

> . . . I was releasing the diabetic inmates . . . when I heard inmates Gonzales [] and Carmona [] yelling at each other as they came out of the cell. Inmate Carmona was the diabetic inmate that was being released. He opened his door and appeared to be shoved out of the cell and fell onto the tier. Gonzales lunged toward Carmona, but Carmona got up and ran down the tier . . . .

23  Plaintiff exhausted his administrative remedies and commenced this action on February 3, 2010.

24  Plaintiff seeks an investigation into defendant's alleged misconduct, and an award of monetary

25  damages for his pain and emotional anguish. (ECF No. 18 at 3.)

26  III. <u>Motion to Dismiss</u>

27      A. <u>Required Elements of an Eighth Amendment Failure to Protect Claim</u>

28  "It is undisputed that the treatment a prisoner receives in prison and the conditions under

which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see also DeShaney v. Winnebago County, 489 U.S. 189, 199-200 (989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").  This responsibility requires prison officials to protect prisoners from injury by other prisoners.  "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 833-34 (1994) (internal quotation marks and citations omitted).

A "failure to protect" claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837.  However, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted).  In a failure to protect case, "that state of mind is one of 'deliberate indifference' to inmate health and safety." Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 302-03).  In articulating the "deliberate indifference" test, the Supreme Court has held "that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.  Under an Eighth Amendment failure to protect claim, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted).

////

### B. Legal Standards for Assessing the Sufficiency of a Claim

Rule 12(b)(6), Federal Rules of Civil Procedures, authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. at 93 (internal citations and quotation marks omitted).

Because a motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim," Navarro v. Block, 250 F.3d 729, 732 (9th Cir.2001), "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rabang v. INS, 35 F.3d 1449, 1451 (9th Cir.1994) (citation omitted).

### C. Legal Standards for Qualified Immunity

"Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The objective of the qualified immunity doctrine is to ensure "that 'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." Anderson v. Creighton, 483 U.S. 635, 640 n.23 (1987) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982)).

An official is entitled to qualified immunity when her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. "Qualified immunity is warranted if 'the facts that a plaintiff has

1  alleged or shown [do not] make out a violation of a constitutional right' or if 'the right at issue
2  was [not] 'clearly established' at the time of defendant's alleged misconduct.'" James v.
3  Rowlands, 606 F.3d 646, 650-51 (9th Cir. 2010) (quoting Pearson, 555 U.S. at 232 (internal
4  citations omitted)).  Conversely, a motion based on qualified immunity will be denied if,
5  construing the facts in the light most favorable to the party asserting the injury, it may reasonably
6  be concluded that defendant violated a constitutional right that was clearly established at the time
7  of the alleged injury.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

       D.  Analysis

9        Defendant contends that the allegations of the Second Amended Complaint fail to support
10 a cognizable failure to protect claim.  Defendant initially asserts that the complaint does not
11 allege "sufficient facts to allow a jury to find that Plaintiff's risk amounted to anything greater
12 than the general risk of being confined in prison.  Plaintiff does not allege that his cellmate had a
13 history of violence.  Nor does Plaintiff allege his cellmate had ever been violent towards him
14 prior to this incident." (ECF No. 27-1 at 5.)
15       While it is true that that complaint lacks allegations that inmate Gonzales had a history of
16 violence, or had previously been violent toward plaintiff, the complaint alleges that Gonzales had
17 drinking and disciplinary problems; that Gonzales did not want to be celled with plaintiff; that
18 Gonzales physically threatened plaintiff; and that plaintiff was fearful of Gonzales.  The
19 complaint alleges that Gonzales became more hostile toward plaintiff, and threatened to "beat
20 him up," after their mutual request for a cell move was denied, and that plaintiff conveyed this
21 information to defendant and others.  The undisputed fact that Gonzales soon injured plaintiff
22 validates plaintiff's concerns.  Construed in the light most favorable to plaintiff, the court finds
23 that these alleged facts are sufficient to support plaintiff's allegations that he faced a heightened
24 risk of harm as a result of being celled with Gonzales.
25       Defendant next contends that the complaint lacks sufficient allegations to support a
26 reasonable inference that defendant had the requisite culpable state of mind.  Defendant asserts
27 that "[p]laintiff makes no allegation that Defendant acted with the intent to cause injury";
28 "[p]laintiff does not allege his cellmate was not safe for double cell housing;" and "there is no

6

evidence that Defendant acted with a state of mind greater than negligence in determining that Plaintiff did not need to be given a different cellmate." (ECF No. 27-1 at 5.) Defendant continues, "[t]he only information Defendant had regarding Plaintiff's risk was Plaintiff's claim that his cellmate had threatened to hit him. Failure to consider these statements a greater risk to plaintiff's safety than the general conditions of confinement does not amount to a state of mind greater than negligence." (Id.)

However, the crux of the complaint is that plaintiff actively sought to communicate to defendant and other correctional officials that the risk to his safety, as a direct result of being celled with Gonzales, was much greater than any other safety risks plaintiff faced due to "the general conditions of confinement." It is precisely because defendant D'Alessandro allegedly failed to move plaintiff, despite having the unique authority to do so, and despite plaintiff's entreaties, that plaintiff initiated this action. Plaintiff alleges that he repeatedly told defendant that he felt threatened by Gonzales, and defendant allegedly responded by telling plaintiff to "man up" to Gonzales, and that there was nothing she could do, despite all the other correctional officers whom plaintiff contacted telling him that only defendant could authorize his move. The court finds plaintiff's alleged facts sufficient to support plaintiff's allegations that defendant knew of, and intentionally disregarded, an excessive risk to plaintiff's safety. Farmer, 511 U.S. at 837. Defendant's attempt to construe plaintiff's allegations as no more than alleged negligence is unavailing.

For these reasons, the court finds the factual allegations of the Second Amended Complaint sufficient to support plaintiff's Eighth Amendment failure to protect claim against defendant D'Alessandro.

Defendant contends, alternatively, that she is entitled to qualified immunity from suit on plaintiff's Eighth Amendment claim. Defendant argues (ECF No. 27-1 at 6-7):

> Plaintiff claims he informed Defendant three times in a two week period that his cellmate was going to hit him, yet Defendant did not move Plaintiff to a different cell. [¶] These vague warnings are not enough to put a reasonable officer on notice that she must move Plaintiff to another cell. The "substantial risk of serious harm" requirement allows a correctional officer reasonable discretion in determining the degree of a risk faced by an inmate. While there

> are some risks that clearly amount to "substantial risks of serious harm," Plaintiff's risk was not clear enough to suggest Defendant knowingly violated the law or acted incompetently. Plaintiff claims his cellmate threatened to hit him. A reasonable officer would not consider this a "substantial risk of serious harm" without more to support the allegation. Defendant should be granted qualified immunity because of her reasonable actions due to the vagueness of Plaintiff's claims that he faced a risk of injury.

Defendant does not challenge clearly established law supporting a prisoner's Eighth Amendment right to be protected from a reasonably foreseeable assault by another prisoner. Rather, defendant contends that she did not participate in acts that allegedly resulted in plaintiff's deprivation of this right. However, qualified immunity does not apply where disputed facts, construed in the light most favorable to the party asserting the injury, show a violation of a clearly established constitutional right of which a reasonable official should be aware. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Therefore, the court finds, for present purposes, that defendant d'Alessandro is not entitled to qualified immunity on plaintiff's Eighth Amendment claim.

IV. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss (ECF No. 27), be denied; and

2. This action proceed on plaintiff's Second Amended Complaint (ECF No. 18).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, petitioner any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////
////
////
////

1  parties are advised that failure to file objections within the specified time may waive the right to
2  appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  Dated: December 19, 2013

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/carm0898.mtd